UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
HOWARD L. WIEDER,                                              :
                                                              :
                     Plaintiff,                               :
                                                              :        DECISION AND ORDER
          -against-                                           :        09-CV-3914 (WFK) (VVP)
                                                              :
CITY OF NEW YORK, JOSE RAMOS,                                 :
Individually, JESSICA ROSARIO,                                :
Individually, ALBERT ALBORANO,                                :
HOME DEPOT U.S.A., INC.,                                      :
JOHN MARRUGO, Individually, ROSARIO                           :
BERG, Individually, and JORGE BERG,                           :
Individually,                                                 :
                                                              :
                     Defendants.                              :
-------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge**

        Howard Wieder ("Plaintiff") commenced this action against the City of New York

("City"), Police Officers Jose Ramos and Jessica Rosario, and Police Sergeant Albert Alborano

(collectively, "City Defendants"), Home Depot U.S.A., Inc. ("Home Depot") and its employee

John Marrugo (collectively, "Home Depot Defendants"), and Rosario Berg and Jorge Berg ("the

Bergs"). This action arises from an incident in which Plaintiff was arrested and charged with

assault in the third degree and harassment in the second degree. Plaintiff seeks recovery under

42 U.S.C. § 1983 for false arrest and false imprisonment, malicious prosecution, malicious abuse

of process, failure to intervene, deprivation of substantive due process, conspiracy to deprive

Plaintiff of his constitutional rights, and *Monell* liability. Plaintiff also seeks recovery under 42

U.S.C. § 1983 against Sgt. Alborano for supervisory liability. Plaintiff further asserts various

supplemental state law claims. Finally, Plaintiff seeks sanctions against the City and Home

1

Depot for spoliation of evidence.[1]  Both the City Defendants and the Home Depot Defendants

move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For

the reasons that follow, the Court dismisses all of Plaintiff's federal claims with prejudice and

dismisses Plaintiff's remaining state law claims without prejudice.

## I.    Factual Background

The following facts are undisputed by the parties, unless otherwise noted.  To the extent

any facts are disputed or ambiguous, they are taken in the light most favorable to Plaintiff, the

non-moving party.

### A. Plaintiff's Arrest

On the evening of August 12, 2008, Jorge Berg ("Mr. Berg") and his wife Rosario ("Mrs.

Berg") went to a Home Depot store in Flushing, New York to return an item.  Pl.'s 56.1 St.

(City)[2] at ¶ 1.[3]  Daphne Watson, a Home Depot employee, informed the Bergs that due to a

computer problem, they would be unable to return the item that night.  *Id.* at ¶ 2.  Believing the

employees were simply being lazy, Mr. Berg raised his voice to get the attention of a manager.

*Id.* at ¶ 4.  Mercedes Garay ("Ms. Garay"), the assistant store manager, explained the store would

be unable to accommodate the return that night due to a system-wide technical problem.  *Id.* at ¶¶

5, 8.  Frustrated at his inability to return the item that night, Mr. Berg became increasingly

---

[1] Though Plaintiff seeks sanctions against both the City and Home Depot Defendants for spoliation of evidence as a separate cause of action in the amended complaint, Plaintiff does not brief this issue in either of his memoranda opposing the City and Home Depot Defendants' respective motions for summary judgment.  Instead, Plaintiff submits a separate motion seeking sanctions for spoliation.  The Court therefore treats Plaintiff's request for spoliation sanctions as a collateral issue and not as a distinct claim.  Indeed, given that a district court's power to impose spoliation sanctions "is derived from Rule 37 [of the Federal Rules of Civil Procedure] or from [its] inherent powers," *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991) (Francis, M.J.), it is unclear that an independent cause of action for spoliation of evidence even exists as a matter of law.
[2] Plaintiff submitted responses to both the City Defendants' and the Home Depot Defendants' respective Local Rule 56.1 Statements of Facts.  For purposes of this decision and order, the Court will refer to Plaintiff's responses to the City Defendants' Rule 56.1 Statement as "Pl.'s 56.1 St. (City)" and to Plaintiff's responses to the Home Depot Defendants' Rule 56.1 Statement as "Pl.'s 56.1 St. (Home Depot)."
[3] By citing to the parties' Local Civil Rule 56.1 Statements of Undisputed Facts, the Court incorporates by reference all relevant sources cited therein.

2

hostile and began to scream obscenities at Ms. Garay. *Id.* at ¶ 9. Ms. Garay then paged John Marrugo ("Mr. Marrugo"), a member of Home Depot's Loss Prevention Department, and asked for his assistance. *Id.* at ¶ 10.

In the face of Mr. Berg's continuing belligerence, Mr. Marrugo warned Mr. Berg he would arrest him if Mr. Berg did not leave the store. *Id.* at ¶ 11. Mr. Berg refused to leave and insisted Mr. Marrugo call the police. *Id.* Mr. Marrugo placed a pair of handcuffs on the desk, called 911, and told the 911 operator that he had an irate customer in the store who was refusing to leave. *Id.* The 911 operator informed Mr. Marrugo that police officers were being dispatched. *Id.* Soon after Mr. Marrugo called 911, Mrs. Berg, who had momentarily stepped away, approached the customer service desk and asked Mr. Berg what was taking him so long. *Id.* at ¶ 12. After Mr. Berg gave his wife his version of events, the Bergs then yelled at Mr. Marrugo and Ms. Garay. *Id.* Eventually, the Bergs decided to leave and began to make their way to the exit. *Id.* at ¶ 13.

As Mrs. Berg was simultaneously arguing with store employees and pushing her shopping cart through the store's entranceway vestibule toward the exit, Plaintiff and his friend, Gaetano Ricciardo ("Mr. Ricciardo"), were on their way into the store. *Id.* at ¶ 14. Mrs. Berg and her shopping cart blocked Plaintiff's entrance to the store. *Id.* Though Plaintiff waited for Mrs. Berg to move, Mrs. Berg paused from her argument with the employees and asked Plaintiff, "What the fuck is your problem?" *Id.* at ¶ 15. After she asked the question a second time, Plaintiff responded, "I'm just trying to pass you by, you fucking bitch." *Id.*

Mr. Berg then approached Plaintiff, cursed at him, and punched Plaintiff several times in the back of his head and upper body. *Id.* at ¶ 16. In return, Plaintiff punched Mr. Berg twice in the chest, causing Mr. Berg to fall to the floor. *Id.* at ¶ 17. Mrs. Berg immediately attacked

3

Plaintiff, punching him in the upper part of his body and arms. *Id.* at ¶ 18. Ms. Garay and

Lucinda Briggs ("Ms. Briggs"), another Home Depot employee, attempted to pull Mrs. Berg

away from Plaintiff. *Id.* As a result, Mrs. Berg lost her balance and fell to the floor. *Id.*

To avoid Mrs. Berg's continuing physical attack, Plaintiff quickly retreated from the store

and into the parking lot. *Id.* at ¶ 20. Mrs. Berg chased after Plaintiff and kicked him in the

stomach. *Id.* Ms. Garay and Ms. Briggs attempted to restrain Mrs. Berg from further attacking

Plaintiff. *Id.* at ¶ 21. In the meantime, Mr. Marrugo had helped Mr. Berg to his feet and tried to

restrain him. *Id.* Despite Mr. Marrugo's efforts, Mr. Berg made his way into the parking lot,

shouted obscenities at Plaintiff, and tried to confront him. *Id.* Seeing that the Bergs might not be

effectively restrained, Plaintiff's friend, Mr. Ricciardo and a Home Depot employee indicated to

Plaintiff that he should leave the premises. *Id.* at ¶ 22. Plaintiff heeded their advice and walked

briskly out of the parking lot. *Id.*

Officers Jose Ramos ("Officer Ramos") and Jessica Rosario ("Officer Rosario") were on

patrol when they received a radio call at 10:29 p.m. reporting a verbal dispute at the Home Depot

in Flushing, New York. *Id.* at ¶ 23. As Officer Ramos drove the patrol car up the driveway

entrance to the Home Depot store, he saw Mr. Marrugo running after Plaintiff. *Id.* at ¶ 24.

When the officers pulled into the Home Depot parking lot, Ms. Briggs, Ms. Garay, and the Bergs

approached the police car and yelled "they are getting away," and pointed in the direction of Mr.

Marrugo and Plaintiff. *Id.* at ¶ 25–26. At this time, Ms. Briggs did not mention the Bergs'

involvement in an altercation to Officers Ramos and Rosario. *Id.* at ¶ 27.

Officers Ramos and Rosario then turned around and drove in the direction where they had

seen Mr. Marrugo and Plaintiff running. *Id.* at ¶ 29. The officers caught up to the two men on the

corner of 131st Street and Fowler Avenue. *Id.* at ¶ 30. By then, Mr. Marrugo had grabbed

4

Plaintiff's upper arm, pushed him against a fence, announced that he was Home Depot security, and ordered Plaintiff not to move. *Id.* at ¶ 31. Mr. Marrugo identified himself to Officer Ramos as a Home Depot security officer and informed Officer Ramos that he chased Plaintiff because he had just assaulted someone in the store. *Id.* at ¶ 32. Mr. Marrugo also told Officer Ramos that Plaintiff had walked up to a woman who was having a customer service dispute, pushed her, hit her with a cart, and struck her when she was on the floor. *Id.* at ¶ 34. As Mr. Marrugo was identifying himself to Officer Ramos, Officer Ramos contemporaneously handcuffed Plaintiff and placed him in the patrol car. *Id.* at ¶ 35.

Officers Ramos and Rosario returned to Home Depot with Plaintiff in the back of the patrol car. *Id.* at ¶ 36. While sitting in the police car, Plaintiff professed his innocence, told the officers he had been the victim of an attack, and urged the officers to look at Home Depot's video surveillance tape. *Id.* at ¶¶ 37, 39. Plaintiff also told the officers that he is a law secretary for a New York State Supreme Court judge. *Id.* at ¶ 38. In response, the officers repeatedly told Plaintiff to "shut the fuck up." Klein Decl., Exs. 6-A (Wieder Dep. Tr. I) at 89:4–13 and 6-B (Wieder Dep. Tr. II) at 158:22–25.

After returning to Home Depot, Officer Ramos interviewed the Bergs and Ms. Garay. Pl.'s 56.1 St. (City) at ¶ 40. Mrs. Berg told Officer Ramos that while she and Mr. Berg were arguing with Home Depot employees over an item return, Plaintiff, upset for some reason, had punched her and Mr. Berg, knocking them to the floor. *Id.* at ¶ 41. Officer Ramos observed redness, swelling, and bruising around Mrs. Berg's face. *Id.* at ¶ 42. Ms. Garay told Officer Ramos that Plaintiff and the Bergs "had got into a fight" but did not provide any specific details. *Id.* at ¶ 43. Ms. Garay did not tell Officer Ramos that Plaintiff had been attacked or that he had acted in self-defense. *Id.* at ¶ 45. Officer Ramos then asked Mrs. Berg if she wanted to press

charges, and Mrs. Berg said she did. *Id.* at ¶ 46; Pl.'s 56.1 St. (Home Depot) at ¶ 11. Though Ms. Briggs offered to make a witness statement, Officer Ramos told her it would not be necessary. Pl.'s 56.1 St. (Home Depot) at ¶ 11. Officer Ramos also did not take a statement from Mr. Ricciardo because he believed Mr. Ricciardo was "biased." Decl. of Joseph Murray ("Murray Decl.") at ¶ 11.

After interviewing the Bergs and Ms. Garay and having observed Mrs. Berg's injuries, Officer Ramos called for a supervisor to approve Plaintiff's arrest. Pl.'s 56.1 St. (City) at ¶ 47. Sergeant Albert Alborano ("Sgt. Alborano") arrived at the scene in an unmarked car. *Id.* at ¶ 48. After speaking with Officer Ramos, Sgt. Alborano confirmed the arrest. *Id.* at ¶ 49. At this point, none of the officers had reviewed Home Depot's surveillance footage, nor had any of them attempted to obtain a copy of the surveillance tape. *Id.* at ¶ 50.

Because Mrs. Berg wanted to press charges against Plaintiff, Officer Ramos instructed her to go to the 109th Precinct. *Id.* at ¶ 51. Officers Ramos and Rosario transported Plaintiff to the 109th Precinct for arrest processing. *Id.* at ¶ 52. While inside the 109th Precinct, an unidentified individual in civilian clothes, who Plaintiff believes was "the on-duty arrest processing officer," pointed at Plaintiff, identifying him as "the guy who robbed me last week." *Id.* at ¶ 53. At the precinct, Officer Ramos took photographs of Mrs. Berg's, which photographs showed bruising, redness, and swelling around Mrs. Berg's face and eye. *Id.* at ¶¶ 54–55. At the end of his work shift in the early hours of August 13, 2008, Officer Ramos transmitted Plaintiff's criminal paperwork to the Queens District Attorney's Office. *Id.* at ¶ 64.

Plaintiff was not eligible for a desk appearance ticket because he did not have valid identification when he arrived at the precinct.[4] *Id.* at ¶ 57. Plaintiff was later transported to

---

[4] Under New York law, a police officer has discretion in certain cases to issue a "desk appearance ticket" to an arrestee rather than hold him in custody until a judge is available to conduct an arraignment. According to this

Central Booking in a cramped police car, which aggravated a preexisting knee injury. *Id.* at ¶¶ 60–61. Upon arriving at Central Booking, an unnamed officer reapplied Plaintiff's handcuffs very tightly. *Id.* at ¶ 62. The officer ignored Plaintiff's complaint and assured him that the handcuffs would be removed shortly. *Id.* At no time did Plaintiff seek any medical attention while in police custody. *Id.* at ¶ 63.

Plaintiff was charged with one count of assault in the third degree and one count of harassment in the second degree. *Id.* at ¶ 66. The criminal complaint against Plaintiff, dated August 13, 2008, notes that the charges are based on Mrs. Berg's statements to Officer Ramos, which reported that Plaintiff pushed, shoved, and punched Mrs. Berg in the face and arms, causing bruising, swelling, redness, and substantial pain to her left eye. *Id.* at ¶ 67; Silver Decl., Ex. P ("Criminal Complaint"). Mrs. Berg signed a supporting deposition on August 12, 2008 confirming the accuracy of the criminal complaint. Pl.'s 56.1 St. (City) at ¶ 68.

On August 13, 2008, Plaintiff's counsel went to Home Depot to serve a subpoena on the store operations manager, directing Home Depot to produce all security videos of the incident involving Plaintiff. Murray Decl. at ¶ 4. While he was at the store, Plaintiff's counsel spoke with Mr. Marrugo, who stated the video showed Mr. Berg was the initial aggressor in the scuffle between Plaintiff and the Bergs. *Id.* at ¶ 8. However, Mr. Marrugo did not give Plaintiff's counsel a copy of the surveillance tape at this time. *Id.* at ¶ 10. On August 15, 2008, without having yet received or viewed the video tape, Plaintiff's counsel traveled to the 109th Precinct and spoke with Officer Ramos. *Id.* at ¶ 11. Plaintiff's counsel informed Officer Ramos that Home Depot surveillance video showed Mr. Berg hitting Plaintiff first, such that Plaintiff's arrest was made improperly. *Id.* at ¶ 12. Officer Ramos agreed to meet Plaintiff's counsel at the Home

---

procedure, the arrestee is released and must return to the criminal court at a future date for arraignment. N.Y. Crim. Proc. Law §§ 150.10(1), 150.20.

Depot store to view the video tape. *Id.* However, Officer Ramos did not meet with Plaintiff's counsel at the store, and Officer Ramos indicated he would not take any action to correct what was apparently an improper arrest of Plaintiff. *Id.* at ¶ 15.

On August 22 and September 3, 2008, Assistant District Attorney ("ADA") Katherine Dmochowski subpoenaed copies of the Home Depot video surveillance tape containing footage of the August 12, 2008 incident. Pl.'s 56.1 St. (City) at ¶¶ 69–70. On September 23, 2008, after reviewing the video tape, ADA Dmochowski dropped all charges against Plaintiff, and the criminal case was dismissed and sealed. *Id.* at ¶ 72.

### B. Procedural History

Plaintiff commenced this action on August 5, 2009 in the New York State Supreme Court, Queens County against the City Defendants, the Home Depot Defendants, Rosario Berg, and Jorge Berg. The Defendants removed the action to this Court on September 10, 2009 pursuant to 28 U.S.C. § 1441(a). Plaintiff filed an amended complaint on August 12, 2011. Plaintiff has withdrawn his claims for malicious abuse of process; deprivation of substantive due process; conspiracy; supervisory liability; municipal liability; intentional infliction of emotional distress; negligent screening, hiring, and retention; negligent training and supervision; negligence; and slander. Pl.'s Opp. (City) at 15 n.4; Pl.'s Opp. (Home Depot) at 3 n.1. Plaintiff has also withdrawn his failure to intervene claim as asserted against the Home Depot Defendants. Pl.'s Opp. (Home Depot) at 3 n.1. Therefore, the only remaining federal claims are § 1983 claims for false arrest and malicious prosecution against both the City and Home Depot Defendants, and a § 1983 failure to intervene claim against the City Defendants. The only remaining state law claims are for false arrest, assault and battery, malicious prosecution, and *respondeat superior* liability against both the City and Home Depot Defendants.

## II.    Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal citations and quotation marks omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *accord Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment."). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

9

## III.   Discussion

### A. State Action Requirement Under § 1983

"In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002).   A private party acts under color of state law for purposes of a § 1983 action where that party engages in conduct that would constitute "state action" for purposes of the Fourteenth Amendment.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982); *Arar v. Ashcroft*, 585 F.3d 559, 629 n.6 (2d Cir. 2009) (the "state action" and "color of state law" inquiries are "interchangeable") (citing *Lugar*, 457 U.S. at 929).   The conduct of a private entity may be considered state action where, *inter alia*, the private actor is a "willful participant in joint activity with the state . . . ('the joint action test' or 'close nexus test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam) (internal editing and quotation marks omitted) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001)); *see also Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) ("Conduct that is ostensibly private can be fairly attributed to the state only if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.") (internal quotation marks omitted).   Mere conclusory allegations that a private entity engaged in joint action with the state do not satisfy the "under color of state law" requirement for a § 1983 action. *Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 170 (S.D.N.Y. 2006) (Conner, J.).

### B. False Arrest and False Imprisonment

#### 1. Applicable Law

A § 1983 claim for false arrest sounding in the Fourth Amendment is "substantially the same" as a claim for false arrest under New York law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Under New York law, the torts of false arrest and false imprisonment are "synonymous" and are hence analyzed as a single claim. *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991). "To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Carson v. Lewis*, 35 F. Supp. 2d 250, 257 (E.D.N.Y. 1999) (Seybert, J.) (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)). The existence of probable cause supporting an arrest is a complete defense to a claim for false arrest, whether that action is brought under state law or under § 1983. *Weyant*, 101 F.3d at 852; *Singer*, 63 F.3d at 118.

A police officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. Determining the existence of probable cause "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." *Maryland v. Macon*, 472 U.S. 463, 470 (1985) (internal citation omitted).

The validity of an arrest does not depend upon a finding that the arrested person is guilty. *See Pierson v. Ray*, 386 U.S. 547, 555 (1967). "Once an officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically

11

plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). At the same time, "an officer may not disregard plainly exculpatory evidence." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).

The existence of probable cause may be determined as a matter of law provided there is no factual dispute regarding the pertinent events and the knowledge of the officers. *See, e.g.*, *Singer*, 63 F.3d at 118–19 (affirming dismissal of false arrest claim on the ground that store employees' reports of shoplifting established probable cause to arrest plaintiff). Here, the Court must determine whether a reasonable jury could believe Defendants lacked probable cause to arrest Plaintiff for assault in the third degree or harassment in the second degree.

Whether an encounter between the police and a suspect rises to the level of an arrest depends on a number of considerations, including the "amount of force used by the police, the need for such force, and the extent to which an individual's freedom of movement was restrained, and in particular such facts as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used." *United States v. Vargas*, 369 F.3d 98, 101 (2d Cir. 2004). Ultimately, an arrest occurs where the police "seize" the suspect such that the suspect does "not feel free to leave, in a manner that was unreasonably intrusive under the circumstances." *Posr*, 944 F.2d at 99.

### 2. The Court Grants Summary Judgment to the City Defendants as to Plaintiff's Federal and State False Arrest Claims

Because Officers Ramos and Rosario had probable cause to arrest Plaintiff, the Court grants summary judgment to the City Defendants as to Plaintiff's federal and state false arrest claims.

At the outset, the Court rejects Plaintiff's argument that Officers Ramos and Rosario "continued" an arrest initially performed by Mr. Marrugo. *See* Pl.'s 56.1 St. (City) at ¶ 77. As discussed *infra*, the Court finds Mr. Marrugo did not act under color of state law for purposes of Plaintiff's section 1983 claims. Because Mr. Marrugo was not a state actor, he could not have performed an arrest, and thus the officers could not have "continued" an earlier arrest performed by Mr. Marrugo.

Applying the law to the facts at hand, the Court concludes the first and only arrest of Plaintiff occurred when Officers Ramos and Rosario handcuffed Plaintiff and placed him in the patrol car. The undisputed facts show Officers Ramos and Rosario handcuffed Plaintiff and took him into custody shortly after they left the Home Depot parking lot and encountered Mr. Marrugo and Plaintiff at the corner of 131st Street and Fowler Avenue. The officers outnumbered Plaintiff, Plaintiff was not suspected of being armed, and Plaintiff was handcuffed and detained in the back of a police vehicle up until his arrival at the 109th Precinct. Under the circumstances, no reasonable jury could find Plaintiff was not restrained in a manner rising to the level of an arrest. Therefore, the only relevant question is whether Officers Ramos and Rosario possessed sufficient facts to support probable cause before and at the time of Plaintiff's arrest.[5]

"Although flight alone is generally not sufficient to justify a stop or pursuit, [a plaintiff's] flight may be considered in conjunction with other attendant circumstances such as time and location, as well as the police officers' knowledge that a crime had been committed, to establish probable cause." *Morgan v. Superintendent*, 88 F. Supp. 2d 312, 317 n.48 (S.D.N.Y. 2000) (Kaplan, J.) (citing *Sibron v. State of New York*, 392 U.S. 40, 66–67 (1968)). In this case,

---

[5] The City Defendants argue Officers Ramos and Rosario had probable cause to arrest Plaintiff due to Mrs. Berg's allegations that Plaintiff assaulted her and their observations of Mrs. Berg's injuries. City Defs.' Mem. at 6–7. However, because these facts came to light after Plaintiff's actual arrest, they are irrelevant to the question of whether the officers had probable cause.

there is no dispute that Officers Ramos and Rosario knew that a crime might have been committed at the Home Depot since they were responding to a radio call requesting police assistance. While approaching the store, they saw two men flee the scene of the potential crime and were told the men "were getting away." Thus, while Plaintiff's flight from the scene did not in and of itself provide probable cause, in context, it suggested to the officers that he might have been guilty of criminal misconduct.

Moreover, when the officers encountered Mr. Marrugo and Plaintiff, the former identified himself as Home Depot security personnel and told the officers Plaintiff had just assaulted someone at the Home Depot. "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (internal citations omitted); *see also Prowisor*, 426 F. Supp. 2d at 172. In this case, nothing suggested to Officers Ramos and Rosario that Mr. Marrugo was not telling the truth. The Court concludes that because the officers had "knowledge or reasonably trustworthy information of facts and circumstances . . . sufficient to warrant a person of reasonable caution in the belief that [Plaintiff had] committed . . . a crime," they had probable cause to arrest Plaintiff. *Weyant*, 101 F.3d at 852. As such, Plaintiff's federal and state false arrest claims against the City Defendants are dismissed with prejudice.

### 3. The Court Grants Summary Judgment to the Home Depot Defendants as to Plaintiff's Federal False Arrest Claim

Plaintiff's § 1983 claim for false arrest against the Home Depot Defendants fails as a matter of law. The record is devoid of any evidence supporting the notion that the conduct of Home Depot or Mr. Marrugo satisfies the "joint action" test. The Second Circuit has held that where a private security guard detains an individual for suspected shoplifting and police officers

14

later arrest that individual solely based on the security guard's allegations of criminal

wrongdoing, the private security guard's behavior does not rise to the level of state action

because there is no "nexus" between the state and the challenged private action sufficient to

attribute the private action to the state. *See Prowisor v. Bon-Ton, Inc.*, 232 F. App'x 26, 28 (2d

Cir. 2007); *see also Guiducci v. Kohl's Dep't Stores*, 320 F. Supp. 2d 35, 37 (E.D.N.Y. 2004)

(Platt, J.) (except in special circumstances, section 1983 does not apply to store security guards).

That same reasoning applies with equal force here. Mr. Marrugo did not act pursuant to state

authority, nor did he act jointly with the defendant police officers in detaining Plaintiff.

Accordingly, the Home Depot Defendants' actions were not "under color of state law," and

summary judgment is appropriate as to Plaintiff's § 1983 false arrest claim against the Home

Depot Defendants.

  Plaintiff argues a private security guard's detention of an individual may satisfy the state

action requirement where "the officers who took custody of the plaintiff simply adopted the

security guard's judgment regarding probable cause for the arrest and failed to conduct an

independent investigation of the matter." Pl.'s Opp. (Home Depot) at 8. In support of this

proposition, Plaintiff cites two unreported cases from the Southern District of New York and one

case from the Tenth Circuit. *See Brooks v. Santiago*, No. 93 Civ. 206, 1998 WL 107110

(S.D.N.Y. Mar. 10, 1998) (Baer, J.); *Vigliano v. Cnty. of Westchester*, No. 92 Civ. 3598, 1998

WL 912081 (S.D.N.Y. Dec. 30, 1998) (Lowe, J.); *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423

(10th Cir. 1984). All of these cases were decided prior to the Second Circuit's decision in

*Prowisor*. The Court declines to adopt the reasoning of these non-binding decisions, especially

in light of the Second Circuit's holding in *Prowisor*.

The police officer in *Prowisor* handcuffed and arrested the plaintiff based solely on the private security guards' allegations that the plaintiff had stolen a pair of earmuffs, despite the availability of the actual earmuffs and a surveillance tape of the alleged theft. *Prowisor*, 426 F. Supp. 2d at 169. Nevertheless, the Second Circuit affirmed the district court's finding that the private security guards were not state actors for purposes of a § 1983 action. *Prowisor*, 232 F. App'x at 28. Although the police officers simply adopted the judgment of the private security guards and did not conduct an "independent investigation" in *Prowisor*, this did not convert the security guards into state actors. Therefore, even if Officers Ramos and Rosario arrested Plaintiff based solely on Mr. Marrugo's judgment that Plaintiff had committed a crime, the Court concludes Mr. Marrugo did not act under color of state law. In any event, the undisputed facts show Officers Ramos and Rosario did not merely adopt Mr. Marrugo's judgment in finding probable cause to arrest. When they arrived at the Home Depot, they saw two men running from the parking lot and several individuals shouted "they were getting away." Combined with the radio call informing them of a verbal dispute at the Home Depot, Officers Ramos and Rosario clearly did not simply adopt Mr. Marrugo's judgment in deciding to arrest Plaintiff. Accordingly, Plaintiff's § 1983 claim for false arrest against the Home Depot Defendants is dismissed with prejudice.

### C. Malicious Prosecution

#### 1. Applicable Law

In New York, a claim for malicious prosecution brought under 42 U.S.C. § 1983 has four elements: (1) the initiation of a proceeding, (2) termination of said proceeding favorable to plaintiff, (3) lack of probable cause, and (4) malice. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 1250

(N.Y. 1983)).  In addition, a plaintiff asserting a Fourth Amendment malicious prosecution claim

under § 1983 must show "some deprivation of liberty consistent with the concept of 'seizure.'"

*Singer*, 63 F.3d at 116.

As to the probable cause element, "even when probable cause is present at the time of

arrest, evidence could later surface which would eliminate that probable cause.  In order for

probable cause to dissipate, the groundless nature of the charge must be made apparent by the

discovery of some intervening fact." *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)

(citation omitted).  Should exculpatory facts come to light "between the time of the arrest and the

time that [the officers] arrived at the police station and actually charged [an individual]," then a

malicious prosecution claim may go forward, despite the existence of probable cause at the time

of arrest.  *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).

### 2.   The Court Grants Summary Judgment to the Home Depot Defendants as to Plaintiff's Federal Malicious Prosecution Claim

The Court has already determined the Home Depot Defendants did not act under color of

state law.  Accordingly, Plaintiff's § 1983 malicious prosecution claim against the Home Depot

Defendants is defective as a matter of law, and the Court dismisses that claim with prejudice.

*See Prowisor*, 232 F. App'x at 28.

### 3.   The Court Grants Summary Judgment to the City Defendants as to Plaintiff's Federal and State Law Malicious Prosecution Claims

Plaintiff argues that even if the City Defendants had probable cause to arrest Plaintiff,

any such probable cause was "vitiated" by the officers' failure to properly interview available

witnesses and review the Home Depot surveillance video.[6]  Plaintiff cites *Oliveira v. Mayer* for

---

[6] Plaintiff raises this argument in the context of his false arrest claims, asserting that the police officers conducted an inadequate investigation in the Home Depot parking lot, thus undermining their finding of probable cause to arrest Plaintiff based on Mrs. Berg's statements and her visible injuries.  However, because the Court has already concluded that Officers Ramos and Rosario had probable cause to arrest Plaintiff prior to interviewing Mrs. Berg

the proposition that in determining whether probable cause exists, "[r]easonable avenues of investigation must be pursued." 23 F.3d 642, 647 (2d Cir. 1994) (citing *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986)).  Plaintiff also cites *Kerman v. City of New York*, for the proposition that police officers are "not free to disregard plainly exculpatory evidence" in determining probable cause.  261 F.3d 229, 241 (2d Cir. 2001).  Citing these and other cases, Plaintiff contends the following facts defeat probable cause:  (1) the officers ignored Plaintiff's pleas of innocence; (2) the officers failed to obtain or review an available surveillance video tape that would have exculpated Plaintiff; (3) the officers accepted a cursory explanation from Ms. Garay that Plaintiff and the Bergs "had got into a fight" without further questioning her as to details; (4) the officers declined to interview Ms. Briggs, despite her offer to make a statement; (5) the officers did not interview Plaintiff's friend, Mr. Ricciardo, because they believed he was "biased."

The Court rejects Plaintiff's argument that the foregoing facts undermine the officers' finding of probable cause to prosecute Plaintiff.  Officers Ramos and Rosario pursued reasonable avenues of investigation, and they did not disregard "plainly exculpatory evidence."  First, "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Panetta*, 460 F.3d at 395–96.  Moreover, even where a plaintiff explains that he acted in self-defense, police officers are entitled to credit the allegations of a complaining victim in finding probable cause, especially where that victim bears visible injuries. *See Ricciuti*, 124 F.3d at 128.  In this case, Plaintiff's self-serving cries of innocence did not undermine the validity of his arrest, and Mrs. Berg's allegations were consistent with visible injuries to her face.

---

and seeing her injuries, Plaintiff's argument, which is predicated on events occurring in the parking lot and after his actual arrest, is more properly understood as contending that probable cause "dissipated" after Plaintiff's arrest.

Therefore, the officers' failure to credit or investigate Plaintiff's claims of innocence did not undermine probable cause to prosecute Plaintiff.

Officers Ramos and Rosario's failure to review or obtain a surveillance video that Plaintiff claimed exonerated him likewise did not vitiate probable cause. In *Prowisor*, the district court found the defendant police officers had probable cause to arrest based solely on store security guards' claims that the plaintiff had stolen a pair of earmuffs. 426 F. Supp. 2d at 172. Similar to the case at bar, the plaintiff in *Prowisor* argued the defendant police officers had a duty to investigate the security guards' claims given: "(1) plaintiff's 'vehement' denial of having committed the alleged crime; (2) the existence of a video recording of plaintiff's actions in the store; and (3) the security guards' failure to produce the allegedly purloined earmuffs." *Id.* The court rejected the plaintiff's argument, noting police officers are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Id.* (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 168 (2d Cir. 2002)). The Second Circuit summarily affirmed. 232 F. App'x at 27–28.

Here, the case for probable cause is even stronger than that in *Prowisor*—not only did Mr. Marrugo tell Officers Ramos and Rosario that Plaintiff had committed an assault, but the officers also saw Plaintiff running from a potential crime scene and heard several individuals telling them to pursue Plaintiff. Moreover, the officers later took a statement from Mrs. Berg, visibly injured, who claimed Plaintiff had been the initial aggressor, which further bolstered the officers' earlier determination of probable cause. In light of these facts, the officers' decision not to review or obtain a copy of the surveillance footage did not vitiate probable cause to prosecute Plaintiff after his arrest.

Finally, the officers' failure to interview Ms. Briggs or Mr. Ricciardo did not undermine their finding of probable cause. Plaintiff contends that "courts have routinely held that officers must take reasonable steps to obtain readily available information that will clarify the existence of probable cause and may not ignore such evidence when presented with it." Pl.'s Opp. (City) at 21. Plaintiff cites a number of cases, apparently supporting the proposition that declining to interview every eyewitness with information relevant to the probable cause inquiry poisons the entire probable cause determination. However, Plaintiff overstates his position, and the cases he cites are distinguishable from the case at bar. For instance, in *Loria v. Gorman*, the Second Circuit found the defendant police officer lacked probable cause to arrest not because he failed to question the complaining victim, but because he failed to ask her questions regarding facts material to the probable cause determination. 306 F.3d 1271, 1293 (2d Cir. 2002). In other words, the officer lacked probable cause not because of a procedural defect in his investigation, but because he simply did not have sufficient facts on hand to find probable cause. By contrast, Officers Ramos and Rosario had more than enough facts to find probable cause, given the circumstances of their arrival on the scene, their personal observations, and Mr. Marrugo's statements.

Of the cases cited by Plaintiff with respect to his argument that the officers' failure to interview Ms. Briggs or Mr. Ricciardo vitiated probable cause, *Wong v. Yoo* presents the most similar facts. *See* 649 F. Supp. 2d 34 (E.D.N.Y. 2009) (Sifton, J.). In *Wong*, the court denied summary judgment as to the plaintiff's false arrest claims against defendant police officers because under the plaintiff's version of events, there were several "circumstances that called into doubt [the complaining victim's] version of events and required further investigation into whether probable cause to arrest plaintiff for assault was negated by the justification of self-

20

defense." *Id.* at 60 (citing *Lowth*, 82 F.3d at 571). Specifically, the plaintiff in *Wong* alleged that when the defendant police officers arrived on the scene, two individuals were stepping or kneeling on his neck and back, the plaintiff was visibly bleeding and spitting out blood and teeth, there was no threat of immediate harm, and there were several eyewitnesses eager to provide statements in plaintiff's favor. *Id.* In holding the defendant police officers were obligated to conduct a more thorough investigation into whether probable cause existed, the district court in *Wong* cited *Lowth* for the proposition that "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Id.* (citing 82 F.3d at 571).

The facts of *Wong* are clearly distinguishable from those in this case. The district court in *Wong* recited a litany of facts calling into doubt the complaining victim's version of events. For instance, according to the plaintiff's version of events in *Wong*, the defendant police officers observed two men restraining the plaintiff by stepping or kneeling on his neck and back, and "plaintiff was dazed, had sustained cuts and tears to his body and clothing, and was visibly bleeding and spitting up blood and teeth at the time." *Id.* Because the plaintiff was being restrained in a brutal manner and had sustained serious injuries, the officers had reason to doubt the complaining witness' claim that the plaintiff was the initial aggressor. Here, on the other hand, Mr. Marrugo was restraining Plaintiff in a reasonable manner, and Plaintiff had no visible injuries. As such, Officers Ramos and Rosario were not faced with facts seriously calling into question Mr. Marrugo's or Mrs. Berg's version of events.

Indeed, the facts in this case are very similar to those in *Ricciuti*, where the Second Circuit rejected the argument that the arresting officer lacked probable cause where the officer failed to make "further inquiries" or "interview[] witnesses at the scene," despite the fact that the

21

plaintiff "protested his innocence." 124 F.3d at 128.  In *Ricciuti*, it was undisputed that the complaining witness was visibly injured, told the arresting officer that he had been attacked without provocation, and identified the plaintiff as his assailant.  *Id.*  Moreover, similar to the case at bar, although the *Ricciuti* plaintiff protested that the complaining witness had started the fight, he did not deny causing the witness' injuries.  *Id.*  The Second Circuit concluded that given the complaining witness' version of events and his visible injuries:

> a competent police officer could believe it was objectively reasonable to arrest plaintiff for the assault that had been committed.  The officer was not required to make a full investigation into plaintiff's state of mind prior to taking action.  Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically possible claim of innocence before making an arrest.

*Id.* (citing, *inter alia*, *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979)).

Here, just as in *Ricciuti*, the complaining witness, Mrs. Berg, bore visible injuries, claimed she had been attacked without provocation, and identified Plaintiff as her assailant. Furthermore, though Plaintiff claimed the Bergs started the fight, he did not deny causing Mrs. Berg's injuries.  Because Officers Ramos and Rosario had already determined there was probable cause to arrest Plaintiff on the corner of 131st Street and Fowler Avenue, this post-arrest information bolstered the probable cause determination.  Under those circumstances, the officers' failure to interview Ms. Briggs or Mr. Ricciardo did not vitiate probable cause to prosecute Plaintiff.

Because Officers Ramos and Rosario had probable cause to arrest Plaintiff and no facts came to light prior to Plaintiff's formal charging that would vitiate probable cause, the Court grants summary judgment to the City Defendants as to Plaintiff's federal and state malicious prosecution claims.

### D. Because Plaintiff's False Arrest and Malicious Prosecution Claims Against the City Defendants Fail, the Related Failure to Intervene Claim Fails

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). An officer who fails to intervene is liable for the preventable harm caused by other officers where that officer observes or has reason to know that other officers have committed a constitutional violation, including using excessive force and making an unjustifiable arrest. *Id.* In addition, the officer must have had "a realistic opportunity to intervene to prevent the harm from occurring." *Id.* Finally, "the failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012) (Matsumoto, J.).

Plaintiff asserts the City Defendants failed to intervene to prevent violations of Plaintiff's constitutional rights. The Court has already concluded that the predicate claims for false arrest and malicious prosecution cannot survive. Therefore, the claim for failure to intervene likewise fails, and the Court dismisses that claim with prejudice.

### E. The Court Dismisses Without Prejudice Plaintiff's Remaining State Law Claims for False Arrest, Malicious Prosecution, Assault and Battery, and *Respondeat Superior* Liability

"[T]he exercise of supplemental jurisdiction is left to the discretion of the district court." *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994). All of Plaintiff's federal claims have now been dismissed from the case with prejudice. Plaintiff has raised several state law claims that may survive a motion for summary judgment, but the Court declines in its discretion to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in order to consider them. *See, e.g.*, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are

23

dismissed before trial, even though not insubstantial in a jurisdictional sense, the state law claims should be dismissed as well."); *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (same). Accordingly, the Court dismisses without prejudice Plaintiff's remaining state law claims for false arrest, malicious prosecution, assault and battery, and *respondeat superior* liability.

Because the Court dismisses the remaining state law claims without prejudice, Plaintiff is free to re-file them in state court. The Court adds that "dismissal will not have any impact on the statute of limitations for these claims, because, pursuant to 28 U.S.C. § 1367(d), the limitations period is tolled while the claims are pending and for 30 days after they are dismissed." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).

### F. The Court Dismisses All Claims Against the Bergs *Sua Sponte*

The Berg Defendants have not moved for summary judgment, nor has Plaintiff formally withdrawn any of his claims against them. However, to the extent Plaintiff asserts any federal claims against the Berg Defendants, those claims are dismissed with prejudice *sua sponte* for the same reasons the federal claims against the Home Depot Defendants are dismissed. *See Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 362 (2d Cir. 2000) (holding that district courts may dismiss frivolous claims *sua sponte*). Specifically, the Berg Defendants did not act "under color of state law," precluding any possible § 1983 claims against them. *See Hollander v. Copacabana Nightclub*, 580 F. Supp. 2d 335, 343 (S.D.N.Y. 2008) (Cedarbaum, J.) (dismissing § 1983 claims against non-moving private defendants because no facts alleged would satisfy the state action inquiry). Therefore, the only surviving claims against the Berg Defendants sound in state law, and the Court declines to exercise supplemental jurisdiction over those state law claims.

## IV.    Conclusion

For the reasons stated above, the Court GRANTS summary judgment to the City Defendants with respect to Plaintiff's federal and state false arrest, malicious prosecution, and failure to intervene claims. Accordingly, those claims are DISMISSED WITH PREJUDICE. The Court GRANTS summary judgment to the Home Depot Defendants with respect to Plaintiff's federal false arrest and malicious prosecution claims. Accordingly, those claims are DISMISSED WITH PREJUDICE. Because the Berg Defendants did not act "under color of state law," all federal claims against the Berg Defendants are DISMISSED WITH PREJUDICE *sua sponte*. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against the City Defendants, Home Depot Defendants, and the Bergs. Therefore, Plaintiff's remaining state law claims are DISMISSED WITHOUT PREJUDICE. The Clerk of Court is directed to enter judgment for the City and Home Depot Defendants, and to close the case.

**SO ORDERED**

Dated: Brooklyn, New York             s/WFK
           April 29, 2013

                                              HON. WILLIAM F. KUNTZ, II
                                              United States District Judge

25